UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

EURIL BRAGON NOBLES,

        Plaintiff,

v.

QUALITY CORRECTIONAL CARE OF
MICHIGAN et al.,

        Defendants.
_____/

Case No. 1:21-cv-199

Honorable Robert J. Jonker

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against the Michigan Department of Corrections. Plaintiff's claims against Defendants Quality Correctional Care of Michigan, Unknown Spitters, Richard Worel, and P. Sices remain.

**Discussion**

**I.      Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.  The events about which he complains occurred at that facility.  The MDOC Offender Tracking Information System shows that Plaintiff is serving a life sentence for first-degree murder, consecutive to a sentence of 2 years for use of a firearm during the commission of a felony.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=191533 (visited April 18, 2021).  Plaintiff has been in the custody of the MDOC for the past 33 years, almost all of his adult life.

Plaintiff filed his complaint on February 22, 2021.[1]  Plaintiff sues Quality Correctional Care of Michigan—which he notes is also known as Corizon—the MDOC, Physician's Assistant Unknown Spitters, Dr. Richard Worel, and Dr. P. Sices.  His claim is that Defendants were deliberately indifferent to his serious medical need:  namely, a growth in his left testicle that he says was the size of a baseball when it was surgically removed in November of 2017.  Plaintiff's full story begins upon his arrival at LRF about 5 years earlier.

On October 30, 2012, upon his arrival at LRF, Plaintiff informed the intake nurse regarding his medical issues, including lumps that he had recently discovered on one of his testicles.  Plaintiff was interviewed by Dr. Wilfredo Gamez a couple of weeks later.  Dr. Gamez promised to examine Plaintiff regarding the issue, but the doctor never did.

---

[1] The Court received Plaintiff's complaint on March 1, 2021.  The envelope that contained the complaint was postmarked February 23, 2021.  (ECF No. 1. PageID.18.)  Plaintiff signed the complaint on February 22, 2021.  (*Id.*, PageID.16.)  The complaint is deemed filed on the date Plaintiff signed it.  *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("[A] pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court . . . absent contrary evidence, a prisoner does so on the date he or she signed the complaint.") (citations omitted).

On May 20, 2013, Defendant Spitters interviewed Plaintiff. Plaintiff informed Spitters of the lumps and that their presence was an ongoing problem that Plaintiff had suffered since August of 1989. Spitters told Plaintiff that the doctor would call him out and examine Plaintiff.

On July 3, 2013, Plaintiff was seen by Defendant Worel, who, Plaintiff suggests, is now deceased. (Compl., ECF No. 1, PageID.5.) Worel examined Plaintiff's testicles, but concluded there was nothing wrong.

On November 22, 2013, Plaintiff was seen by Defendant Spitters. Spitters examined Plaintiff's testicles, found a lump on the right testicle, and put Plaintiff on call-out to see Dr. Worel.

On December 4, 2013, Defendant Worel examined Plaintiff again. Dr. Worel wrote an order to have Plaintiff seen by an oncologist. Later, Plaintiff was told by a nurse that Dr. Worel would, instead, send Plaintiff for an ultrasound.

On February 5, 2014, Plaintiff saw Dr. Worel again to complain about the pain he suffered because of his enlarged testicles.

On an undisclosed date, Plaintiff saw Defendant Sices. Plaintiff complained that other medical staff had refused to obtain the necessary medical treatment for Plaintiff's pain and enlarged testicles. Dr. Sices also failed to help.

From June, 2015 through December 21, 2016, Plaintiff left the facility six times to stay at the Wayne County Jail where he addressed matters relating to his criminal conviction. Each time Plaintiff returned, he saw Defendant Spitters or Defendant Worel. Each time Plaintiff reminded them of his pain, suffering, and enlarged testicles. Yet neither Spitters nor Worel took any action to address the problems. Dr. Worel told Plaintiff sometime in 2015 and on November 1,

2016, that surgery addressing the problem would be only cosmetic and that Worel's bosses in Lansing would not pay for such surgery unless Plaintiff's condition were life-threatening. Plaintiff understood Worel's bosses to be Defendant Quality Correctional Care of Michigan (herein Corizon).

On May 6, 2017, Plaintiff was seen by Defendant Sices. Plaintiff again complained about the pain and his enlarged testicles. Sices did nothing.

On May 31, 2017, Plaintiff was examined by Defendant Worel. At the time, Plaintiff reports, his left testicle was about the size of a baseball. Defendant Worel again concluded that nothing was wrong with Plaintiff's testicles.

The same thing happened on August 31, 2017, except this time, Dr. Worel ordered an ultrasound test. On September 14, 2017, Plaintiff's testicles were examined by ultrasound. Plaintiff did not hear any results, but on October 19, 2017, Plaintiff was transported to a urology specialist outside the prison. The urologist, Dr. Walker, examined Plaintiff's testicles and determined that Plaintiff needed immediate surgery on the left testicle. But Dr. Walker was concerned that he did not have enough of Plaintiff's medical record—for example, he did not have the recently completed ultrasound—to make a final determination as to the appropriate treatment. Dr. Walker sent Plaintiff back to the prison, declining to perform surgery until he had seen the ultrasound. Dr. Walker printed out a report indicated that Plaintiff needed surgery and that the doctor needed the ultrasound.

On November 8, 2017, Plaintiff was taken to the hospital and his left testicle was surgically removed. Plaintiff alleges that at the time the testicle was removed, it had been enlarged for two years, was about the size of a baseball, and had a large solid mass growing inside it.

4

When Plaintiff returned to the prison, he asked the nurses to make sure that Dr. Worel did not change Dr. Walker's prescribed medication to help Plaintiff heal from surgery. The nurse informed Plaintiff that Dr. Worel was too busy to see Plaintiff. Plaintiff told the nurse to tell Worel that if Worel changed the medications, Plaintiff would grieve him. Dr. Worel then saw Plaintiff and accused Plaintiff of threatening the doctor. Plaintiff was taken to segregation, but released to his housing unit shortly thereafter.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need in violation of the Eighth Amendment by denying Plaintiff treatment for five years. Plaintiff seeks damages of $250,000. Additionally, Plaintiff claims that Dr. Worel violated Plaintiff's constitutional rights when he retaliated against Plaintiff for engaging in conduct protected by the First Amendment. Plaintiff seeks damages of $20,000 for the retaliation.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.  The MDOC as a defendant

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v.*

*Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).  Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  Therefore, Plaintiff's claim against the MDOC therefore also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

## IV.   Corizon as a defendant

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West*, 487 U.S. at 48; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street.*, 102 F.3d at 814.  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—as Corizon does—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West,* 487 U.S. at 54).  The requirements for a valid § 1983 claim against a municipality[2] apply equally to

---

[2] A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v.*

private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street,* 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell,* 436 U.S. at 690). Liability in a § 1983 action cannot be based on a theory of *respondeat superior. City of Canton v. Harris,* 489 U.S. 378, 385 (1989). A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994) (internal quotation marks omitted).

Plaintiff's allegation that, under Corizon's direction, he could not get surgery because his condition had to be life-threatening is sufficient to show that Corizon employed a custom or policy that caused the constitutional deprivation alleged.

## V.     Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates

---

*Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious,"

9

*Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

Plaintiff's allegations suffice to show the objective and subjective components of an Eighth Amendment claim for deliberate indifference to his serious medical need against Defendants Worel, Spitters, and Sices. Moreover, because, arguably, that indifference was prompted by Corizon's policy regarding surgery, Plaintiff has stated a claim against Corizon as well.

**VI.    First Amendment retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

10

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's threat to file a grievance against Defendant Worel if he changed Dr. Walker's prescription may be protected conduct. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.[3] *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

---

[3] There is a question as to whether the threatened grievance was "non-frivolous." Defendant Worel's feared change of Dr. Walker's prescriptions might not have been detrimental to Plaintiff at all; indeed, Worel's knowledge of Plaintiff's health history may well have put him in a better position than Dr. Walker to determine appropriate prescribed medications for Plaintiff. Nonetheless, in light of the history of the MDOC's failure to treat Plaintiff's condition and Dr. Walker's recognition of the need to immediately address it, it is understandable that Plaintiff might construe any interference by MDOC doctors as detrimental. At this stage of the proceedings, the Court will give Plaintiff the benefit of the doubt and conclude that the threatened grievance would not have been frivolous.

11

Defendant Worel's instruction to put Plaintiff in "the hole" was certainly adverse to Plaintiff. And it was also obviously motivated by Plaintiff's threat to file a grievance. Accordingly, it appears that Plaintiff has sufficiently stated a First Amendment retaliation claim.

## VII.   The passing of Dr. Worel

Although it appears that Dr. Worel is deceased, it seems unlikely that Plaintiff would have firsthand knowledge of that fact. If, indeed, Dr. Worel is deceased, Plaintiff's claim relating to Dr. Worel's conduct would likely survive his death. The Sixth Circuit has explained how the Court is to determine whether or not the claim is extinguished by a party's death as follows:

> To determine whether § 1983 claims survive, we first look to federal law for an applicable rule of decision. *Robertson v. Wegmann*, 436 U.S. 584, 588–95 (1978). If no suitable federal rule exists, we use the law of the forum state to the extent it is "not inconsistent with the Constitution and laws of the United States." *Id*. at 588; 42 U.S.C. § 1988. No federal statute or rule says anything about the survivorship of § 1983 claims.

*Crabbs v. Scott*, 880 F.3d 292, 294 (6th Cir. 2018). The Court concludes that, under Mich. Comp. Laws § 600.2921 or the common law, whatever cause of action Plaintiff had against Dr. Worel under § 1983 survived Dr. Worel's death. *See Hawkins v. Regional Medical Laboratories, P.C.*, 329 N.W.2d 729, 731–735 (Mich. 1982) (reviewing the history of Michigan's common law regarding survival of actions as well as the statutes regarding survival and wrongful death actions).

Plaintiff is advised, however, that although Plaintiff's § 1983 claim against Dr. Worel would survive Dr. Worel's death, Dr. Worel's capacity to be sued in his own name would not. Capacity to be sued in federal court is determined under Federal Rule of Civil Procedure 17(b), which provides that an individual's capacity to be sued is determined by the law of the individual's domicile. It appears that Dr. Worel was domiciled in Michigan. Under Michigan law, a deceased person does not have the capacity to be sued. *See, e.g., Packard v. Brown*, No.

344720, 2019 WL 3986244, at *4–5 (Mich. Ct. App. Aug. 22, 2019), *leave to appeal denied,* 941 N.W.2d 623 (Mich. 2020).

The Court need not resolve the issue at this preliminary stage of the proceedings. Plaintiff is on notice, however, that he may have to amend his complaint to substitute an alternate party, such as Dr. Worel's estate or the personal representative of Dr. Worel's estate, if Dr. Worel is deceased.

### VIII. Failure to pay the initial partial filing fee

By order entered March 15, 2021, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 6.) The Court ordered Plaintiff to pay an initial partial filing fee of $52.50 on or before April 12, 2021. The Court directed the Michigan Department of Corrections to collect the funds from Plaintiff's trust account and remit them within 28 days. However, the fact that the Court authorized the Michigan Department of Corrections to withdraw the funds did not relieve Plaintiff of his primary responsibility for ensuring the fee was paid. Plaintiff has not paid the initial partial filing fee. Payment is overdue. The Court will allow Plaintiff 28 days to show good cause for his failure to timely pay the initial partial filing fee within 28 days. If Plaintiff does not demonstrate cause for his failure to pay the initial partial filing fee, his complaint may be dismissed without prejudice.

### IX. Request to appoint counsel and stay

Plaintiff also asks the Court to appoint counsel and his motion to stay these proceedings (ECF No. 4). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the presentation of Plaintiff's position.

The Court will likewise deny Plaintiff's motion to stay these proceedings. Plaintiff notes that access to legal research materials is extremely limited due to COVID-19 restrictions. Plaintiff's facility presently has no active positive cases. *See* https://medium.com/@Michigan DOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337 (visited May 5, 2021). Approximately 80% of the prisoners at Plaintiff's facility have already tested positive for, and recovered from, the virus. *Id*. Although the law library is not as accessible as it normally would be, the prison has not precluded inmates from all access to legal research materials.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendant MDOC will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Corizon, Worel, Spitters, and Sices and Plaintiff's First Amendment retaliation claim against Defendant Worel remain in the case.

Additionally, within 28 days, Plaintiff must show good cause for his failure to pay the initial partial filing fee, as required by the Court's March 15, 2021, order granting Plaintiff leave to proceed *in forma pauperis* (ECF No. 6).

An order consistent with this opinion will be entered.

Dated:    May 7, 2021            /s/ Robert J. Jonker
                                                        ROBERT J. JONKER
                                                        CHIEF UNITED STATES DISTRICT JUDGE