UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EURIL NOBLES,

         Plaintiff,

v.

QUALITY CORRECTIONAL CARE
OF MICHIGAN, *et al.*,

         Defendants.
_____/

Case No. 1:21-cv-199

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Euril Nobles, a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on a Renewed Motion to Dismiss (ECF No. 70) filed by defendants Quality Correctional Care of Michigan ("Quality Correctional Care"), PA Daniel Spitters, Dr. Wilfredo Gamez, and Dr. Peter Sices (the "Corizon Defendants") and a Motion to Dismiss (ECF No. 82) filed by Health Care Unit Manager ("HCUM") Jill Britton, Nursing Supervisor Sherri Castenholz, RN Mark A. Karnitz, RN Patricia Lamb, RN Kathleen R. Kilmowicz, RN S. Laughhunn, Grievance Section Manager Richard D. Russell, and RN Lisa Willea (the "MDOC Defendants").

**I.**    **Background**

The main issue before the Court is whether Nobles' complaint is barred by the statute of limitations. The Court construed Nobles' original complaint (ECF No. 1) as filed on February 22, 2021:

1

> The Court received Plaintiff's complaint on March 1, 2021. The envelope that contained the complaint was postmarked February 23, 2021. (ECF No. 1. PageID.18.) Plaintiff signed the complaint on February 22, 2021. (*Id.*, PageID.16.) The complaint is deemed filed on the date Plaintiff signed it. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("[A] pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court . . . absent contrary evidence, a prisoner does so on the date he or she signed the complaint.") (citations omitted).

Opinion (ECF No. 9, PageID.56, fn. 1).

The Court summarized the claims in the original complaint as follows:

> Plaintiff sues Quality Correctional Care of Michigan—which he notes is also known as Corizon—the MDOC, Physician's Assistant Unknown Spitters, Dr. Richard Worel, and Dr. P. Sices. His claim is that Defendants were deliberately indifferent to his serious medical need: namely, a growth in his left testicle that he says was the size of a baseball when it was surgically removed in November of 2017. Plaintiff's full story begins upon his arrival at LRF about 5 years earlier.

*Id*. at PageID.56.  Specifically, "[o]n October 30, 2012, upon his arrival at LRF, Plaintiff informed the intake nurse regarding his medical issues, including lumps that he had recently discovered on one of his testicles." *Id*.  Plaintiff alleged that from that date through 2017, defendants failed to properly treat a lump on his left testicle. *Id*. at PageID.56-58. "On November 8, 2017, Plaintiff was taken to the hospital and his left testicle was surgically removed." *Id*. at PageID.58.  Plaintiff also claims that Dr. Worel retaliated against him after the surgery:

> When Plaintiff returned to the prison, he asked the nurses to make sure that Dr. Worel did not change [outside urologist] Dr. Walker's prescribed medication to help Plaintiff heal from surgery. The nurse informed Plaintiff that Dr. Worel was too busy to see Plaintiff. Plaintiff told the nurse to tell Worel that if Worel changed the medications, Plaintiff would grieve him. Dr. Worel then saw Plaintiff and accused Plaintiff of threatening the doctor. Plaintiff was taken to segregation, but released to his housing unit shortly thereafter.

*Id*. at PageID.59.

During initial screening, the Court found that, "Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Corizon [Quality Correctional Care], Worel,

2

Spitters, and Sices and Plaintiff's First Amendment retaliation claim against Defendant Worel remain in the case." *Id.* at PageID.68. The Court noted that Dr. Worel was deceased and that Nobles "may have to amend his complaint to substitute an alternate party, such as Dr. Worel's estate or the personal representative of Dr. Worel's estate, if Dr. Worel is deceased." *Id.* at PageID.67.

Ultimately, the Court allowed Nobles to file an amended complaint on August 3, 2022. *See* Orders (ECF Nos. 65 and 66); Amend. Compl. (ECF No. 67). The amended complaint omitted claims against Dr. Worel and re-stated the Eighth Amendment claims against the remaining Corizon Defendants. In addition, the amended complaint added new defendants to the lawsuit (the MDOC Defendants). Nobles alleged that new defendants HCUM Britton, Nursing Supervisor Castenholz, RN Karnitz, RN Lamb, RN Kilmowicz, RN Laughhunn, and Grievance Section Manager Russell were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Nobles also alleged that new defendants RN Kilmowicz and RN Willea retaliated against him in violation of the First Amendment.

## II.  Statute of limitations

### A.  Legal Standard

All defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Nobles' claims are barred by the statute of limitations.[1] In addition, defendants Nursing Supervisor Castenholz, RN Lamb, RN Laughhunn and Grievance Section

---

[1] *See Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697, 702 (6th Cir. 1978) ("[w]hile the seven enumerated defenses in Rule 12(b) do not expressly mention an objection based on the bar of the statute of limitations, the prevailing rule is that a complaint showing on its face that relief is barred by an affirmative defense is properly subject to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted").

3

Manager Russell seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims against them.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).[2] Finally, *pro se* complaints "are held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted).

### B. The Corizon Defendants

Nobles underwent surgery at Mercy Hospital to remove his left testicle on November 8, 2017. Amend. Compl. at PageID.855 at ¶ 33. The Corizon Defendants point out that Nobles' allegations against them commenced on October 30, 2012, and ended on May 6, 2017. *See* Corizon Defendants' Brief (ECF No. 70, PageID.1064).

---

[2] The Court notes that there are many such exhibits filed in this case.

4

Nobles filed his original complaint on February 22, 2021, more than three years after any of the Corizon defendants interacted with him. As discussed, the amended complaint (ECF No. 67) is the operative pleading in this case. Nobles' amended complaint removed the deceased Dr. Worel as a defendant and re-alleged his original claims against the Corizon Defendants. Under these circumstances, Nobles' claims against the Corizon Defendants relate back to the filing of the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading[.]").

Nobles' amended complaint seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

All of Nobles' claims in this lawsuit are subject to the three-year statute of limitations applicable to claims brought pursuant to 42 U.S.C. § 1983. *See Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004) (the statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10)). A statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). "Because the statute of limitations is an affirmative

defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk Western Railroad Co.*, 238 F.3d 772, 775 (6th Cir. 2001). "If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Id*.

As discussed below, Nobles knew or had reason to know of alleged injuries on the dates that each individual Corizon defendant treated him and on the date that Quality Correctional Care rejected his surgery. Accordingly, Nobles' claims against the Corizon Defendants accrued more than three years before he filed the original complaint.

1. **Dr. Gamez**

Nobles alleged that he saw Dr. Gamez once, on November 16, 2012. At that time, Nobles told the doctor about the lumps on his testicles. The doctor said he would examine Nobles at a future date, but Nobles never saw the doctor again. Amend. Compl. at PageID.846. Based on these allegations, Nobles' action against Dr. Gamez accrued when the doctor failed to examine his testicles on November 16, 2012, and the three-year statute of limitations expired on November 16, 2015. Dr. Gamez has met his burden of establishing that Nobles' claims against him are barred by the three-year statute of limitations.

2. **PA Spitters**

Nobles alleged that he first saw PA Spitters on May 30, 2013. At that time, Nobles told Spitters that he had lumps growing on his testicles and that "that it was an ongoing problem that Plaintiff had suffered from since August 1989." *Id*. at PageID.847. However, Spitters "did not help the Plaintiff at that meeting." *Id*. at PageID.847. PA Spitters saw Nobles on November 22, 2013, found that Nobles' right testicle was enlarged "with a lump the size of a peach seed growing on it" and told Nobles that he was putting him on call out with Dr. Worel. *Id*. at

PageID.848. Nobles also alleged that from June 26, 2015, through December 22, 2016, "he would sometimes be seen by Mr. Spitters and/or Worel", remind them of his enlarged testicles, and that "Mr. Spitters and Dr. Worel both repeatedly refused to do anything about the Plaintiff's pain, suffering and enlarged testicle." *Id*. at PageID.850 (emphasis omitted). Based on these allegations, Nobles was aware of the alleged deliberate indifference when he first met PA Spitters in 2013 and had interactions with Spitters through December 22, 2016. Based on the last interaction, the statute of limitations for claims against PA Spitters expired on December 22, 2019. PA Spitters has met his burden of establishing that Nobles' claims against him are barred by the three-year statute of limitations.

### 3. Dr. Sices

Nobles alleged that he saw Dr. Sices on May 6, 2017. At that time, Nobles

> informed him about the problems with his enlarged testicles, that he had been allowed to live and suffer for five (5) years in such a condition, because the medical staff at this facility, failed and refused to provide or obtain needed, necessary medical treatment for the Plaintiff's pain, suffering and enlarged testicles.

*Id*. at PageID.851. However, "Dr. Sices, not only didn't do anything to help the Plaintiff, he didn't have any concerns whatsoever about the Plaintiff's condition." *Id*. Based on these allegations, Nobles' claim against Dr. Sices accrued on May 6, 2017, and the statute of limitations expired on May 6, 2020. Dr. Sices has met his burden of establishing that Nobles' claims against him are barred by the three-year statute of limitations.

### 4. Quality Correctional Care

Finally, on November 1, 2016, Nobles was advised that Quality Correctional Care was aware of his condition based on Dr. Worel's statement that,

> The surgery that you are asking for is cosmetic. You are not going to get it. My bosses in Lansing said that they are not going to pay for your surgery, until, your injury becomes life threatening.

7

*Id*. at PageID.850 (emphasis omitted). Plaintiff understood Dr. Worel's "bosses" to be Quality Correctional Care. *Id*. at PageID.850-851. Based on these allegations, Nobles' claim against Quality Correctional Care accrued on November 1, 2016, and the statute of limitations expired on November 1, 2019. Quality Correctional Care has met its burden of establishing that the Nobles' claims against it are time-barred.

### 5. Nobles' arguments

The burden shifts to Nobles to demonstrate that an exception to the affirmative defense exists. *See Campbell*, 238 F.3d at 775. Here, an exception exists because in prisoner civil rights cases, the statute of limitations is tolled for the period during which a prisoner-plaintiff exhausts his available administrative remedies pursuant to 42 U.S.C. § 1997e(a). *Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Although Nobles filed a grievance back in 2013 (*see* discussion, *infra*), Nobles contends that all of his claims are tolled by a grievance filed in 2017, Grievance LRF-17-11-1934 ("1934"). *See* Nobles' Response (ECF No. 72, PageID.1092).

Nobles did not include a complete record of Grievance 1934. However, the Corizon Defendants provided a complete record of the grievance in a previous filing. *See* Grievance 1934 (ECF No. 33-2, PageID.408-428). In Grievance 1934, the incident being grieved occurred on November 14, 2017, and Nobles filed the grievance on November 19, 2017. *Id*. at PageID.411. The November 14, 2017 incident appears to be a post-surgery follow up examination by a urologist. *Id*. At PageID.413. The gist of the grievance is that Nobles requested medical help from "MDOC / (LRF) / HEALTH CARE staff persons" for five years, from 10/30/2012 to 11/8/17, and that he wants $125,000.00 in damages for having his left testicle amputated in 2017. *Id*. In responding to the grievance, the MDOC reviewed Nobles' electronic medical record commencing October 30, 2012, and followed Nobles' treatment history through the date he saw the urologist

8

on November 14, 2017. *Id*. at PageID.412-414. Upon review of the record, the MDOC denied the Step III appeal in Grievance 1934 on March 30, 2018.[3] Based on this response, it appears that the MDOC reviewed Nobles' medical history for the entire five-year history.

The Court will assume, for purposes of these motions, that Grievance 1934 tolled the statute of limitations for all of the claims addressed in the grievance.[4] Nobles contends that all of his claims are timely because he exhausted Grievance 1934 on March 26, 2018, and then filed the complaint on February 23, 2021, less than three years after he exhausted the grievance. *See* Nobles' Response (ECF No. 72, PageID.1091-1092). Nobles' dates are slightly off. As discussed, Nobles exhausted Grievance 1934 on March 30, 2018, and the original complaint was considered filed on February 22, 2021.

Under Nobles' theory, the statute of limitations for all of his claims against Corizon Defendants between 2012 and 2017 did not begin to run until he exhausted Grievance 1934 (March 30, 2018). This is not the way that the tolling operates. Grievance 1934 did not suspend the statute of limitations for all of Nobles' claims against his medical providers. Rather, Grievance 1934 tolled the statute of limitations for the time which Nobles spent exhausting the grievance. *See Brown*, 209 F.3d at 596-97. Nobles spent 131 days exhausting Grievance 1934, *i.e.*, from November 19, 2017, to March 30, 2018. This 131-day period would be added to the three-year statute of limitations for each claim referenced in the grievance. *See id*.

---

[3] While the Bureau of Health Care Services denied the Step III appeal on March 26, 2018, RN Harbaugh did not approve the Step III denial until March 30, 2018, the date that defendant Russell mailed the Step III denial to Nobles. *See* Grievance 1934 at PageID.408.

[4] The Court notes that defendants do not address whether Grievance 1934 properly exhausted the claims alleged in the amended complaint, some of which accrued years before Nobles filed the grievance and some of which were addressed in a previous grievance. *See generally*, MDOC Policy Directive 03.02.130 (eff. July 9, 2007) (ECF No 33-1); Grievance LRF-1401-00014-12D1 ("14") (ECF No. 67-5, PageID.931-941, 952) (Step III Appeal rejected May 14, 2014). However, the question of whether Nobles properly exhausted a grievance before filing this lawsuit is not at issue in these motions.

Here, none of Nobles' claims against the Corizon Defendants can be salvaged through tolling. The statute of limitations for the most recent claim (*i.e.*, Dr. Sices' interaction on May 6, 2017) expired on May 6, 2020. Tolling the statute of limitations for 131 days would extend the statute on that claim to September 14, 2020, about five months before Nobles filed his original complaint. In summary, Nobles' claims against defendants Dr. Gamez, P.A. Spitters, Dr. Sices, and Quality Correctional Care are barred by the statute of limitations. Accordingly, the Corizon Defendants' motion to dismiss (ECF No. 70) should be granted.[5]

### C.     MDOC Defendants

As discussed, Nobles' amended complaint added the MDOC defendants to this lawsuit. Unlike Nobles' claims against the Corizon Defendants, his claims against the new MDOC Defendants do not relate back to the date he filed the original complaint. *See Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) ("Rule 15(c)(1)(B) allows relation back of an amendment asserting a 'claim or defense,' but it does not authorize the relation back of an

---

[5]  In reaching this determination, the Court considered Nobles' contention that the statute of limitations was tolled due to his "imprisonment disability." Nobles claim is meritless. Nobles cites an outdated version of M.C.L. § 600.5851 which he quotes as follows:

> "if [sic] the person first entitled to make an entry or bring an action is under 18 years of age, insane or imprisoned at the time his claim accrues, he or those claiming under him shall 1 years after his disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run."

Nobles Brief (ECF No. 72, PageID.1092). The imprisonment disability was removed from the statute under the 1993 amendatory act (effective in 1994). The current statute addresses the change in pertinent part as follows:

> "(9) If a person was serving a term of imprisonment on the effective date of the 1993 amendatory act that added this subsection, and that person has a cause of action to which the disability of imprisonment would have been applicable under the former provisions of this section, an entry may be made or an action may be brought under this act for that cause of action within 1 year after the effective date of the 1993 amendatory act that added this subsection, or within any other applicable period of limitation provided by law."

M.C.L. § 600.5851(9).

amendment adding a new party."). To file timely claims against these new defendants, Nobles had to file the amended complaint before the three-year statute of limitations expired against them.

The Court allowed Nobles to file the amended complaint on August 3, 2022. *See* Order (ECF No. 66); Amend. Compl. (ECF No. 67). However, for purposes of the statute of limitations, the Court looks to the date when Nobles filed the motion for leave to amend the complaint (ECF No. 22). "Federal courts have uniformly held that a claim set forth in an amended pleading is timely under the applicable statute of limitations, if the motion for leave to amend was filed before the statute of limitations had run." *United States v. Katz*, 494 F. Supp. 2d 641, 644 (S.D. Ohio 2006). As the court explained in *Moore v. State of Indiana*, 999 F.2d 1125 (7th Cir. 1993):

> As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.

*Moore*, 999 F.2d at 1131. In addition, because Nobles is a prisoner, the prison mailbox rule applies. This rule requires the Court to consider his motion to amend as filed on the date he gave the motion to the prison officials to mail. *See, e.g., McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997) (motion for extension of time "is deemed filed when the inmate gives the document to prison officials for mailing"); *Martin v. Wayne*, No. 1:16-cv-1314, 2019 WL 1333739 at *4 (Feb. 26, 2019), R&R *adopted*, 2019 WL 1332016 (W.D. Mich. March 25, 2019) (citing *McGore*). Here, Nobles signed his motion to amend on December 13, 2021 (ECF No. 22) and placed the motion in the mail on December 13, 2021 (ECF No. 23). Based on these facts, for purposes of determining whether the claims in the amended complaint are barred by the statute of limitations, the Court considers the amended complaint as "filed" on December 13, 2021.

As discussed below, Nobles knew or had reason to know of alleged injuries on the dates that defendants RN Kilmowicz, Nursing Supervisor Catenholz, RN Lamb, RN Karnitz, and RN Willea interacted with him. Accordingly, Nobles' claims against these defendants accrued more than three years before he filed the original complaint. However, defendants RN Laughhann, Grievance Section Manager Russell, and HCUM Britton did not meet their burden with respect to the statute of limitations.

1.  **RN Kilmowicz**

Nobles alleged that he met with RN Kilmowicz on November 4, 2013. Amend. Compl. at PageID.847. At that time, Nobles "reminded her about the lumps on his testicles," that "he was in pain and suffering," that he met with Dr. Worel who told him nothing was wrong with him, and that RN Kilmowicz "did nothing for the Plaintiff" and "just sent the Plaintiff back to his housing unit." *Id*. at PageID.847-848. On or about December 4, 2013, Dr. Worel said that Nobles would be seeing an oncologist in about two weeks, but RN Kilmowicz later called Nobles and told him that the doctor had changed his mind and was now sending him for an ultrasound test. *Id*. at PageID.848. Based on these allegations, Nobles was aware of the alleged deliberate indifference when he first met RN Kilmowicz on November 4, 2013. RN Kilmowicz's last interaction occurred on December 4, 2013. Given these allegations, the statute of limitations for claims against RN Kilmowicz expired on December 4, 2016. RN Kilmowicz has met her burden of establishing that Nobles' claims against her are barred by the three-year statute of limitations.

2.  **Nursing Supervisor Castenholz**

Nobles alleged that "[d]uring that same time period" Nursing Supervisor Castenholz responded to Nobles' Step I grievance on the matter and denied his "request for medical treatment to stop his pan and suffering from the enlarged tumors on his enlarged testicles."

*Id*. Nobles based his claim on Grievance LRF-1401-00014-12D1 ("14") (ECF No. 67-5, PageID.923-928, 931-941). Nobles provided an undated and unsigned copy of the Step I Response. *Id*. at PageID.921. Since Nobles dated his Step II appeal and the "Reason for Appeal" on January 23, 2014, the Court concludes that he received the Step I Response from Casetenholz by no later than that date. Grievance 14 at PageID.924, 932. Using as the date in which Castenholz denied the grievance, Nobles' claim against her accrued no later than January 23, 2014, and the statute of limitations expired on January 23, 2017. Nursing Supervisor Castenholz has met her burden of establishing that Nobles' claims against her are barred by the three-year statute of limitations.

### 3. RN Lamb

Nobles alleged that "[a]lso during that time period" RN Lamb denied his Step II appeal. *Id*. at PageID.848-849. The record reflects that RN Lamb denied the Step II appeal on February 14, 2014. Grievance 14, PageID.931-932. Based on these allegations, Nobles' claim against Lamb accrued on February 14, 2014, and the statute of limitations expired by no later than February 14, 2017. RN Lamb has met her burden of establishing that Nobles' claims against her are barred by the three-year statute of limitations.

### 4. RN Karnitz

Nobles alleged that "thereafter" RN Karnitz called out Nobles for a urine test. *Id*. at PageID.849. Nobles did not allege the date of this encounter, which actually occurred in 2013, not "thereafter" in 2014. Nobles stated in an exhibit that he saw RN Karnitz on June 24, 2013. *See* Grievance 14 at PageID.934-935. When Nobles could not provide a urine sample, Karnitz got mad and "sent the Plaintiff back to his housing unit without doing anything to provide the Plaintiff with medical treatment for his pain and suffering for his enlarged testicles." Amend. Comp. at

13

PageID.849. Based on these allegations, Nobles' claim against RN Karnitz accrued on June 24, 2013, and the statute of limitations expired no later than June 24, 2016. RN Karnitz has met his burden of establishing that Nobles' claims against him are barred by the three-year statute of limitations.

### 5. RN Laughhunn and Grievance Section Manager Russell

Nobles alleged that he received a grievance response from RN Laughhunn and Grievance Section Manager Russell "who together alleged that the Plaintiff's Step III Grievance [in this matter] was untimely filed in their offices" and "denied the Plaintiff's request for medical treatment to stop his pain and suffering from the enlarged tumors on his enlarged testicles." *Id*. at PageID.849-850 (emphasis omitted). Nobles filed his Step III appeal on March 7, 2014. *See* Grievance 14 at PageID.933. However, because neither Nobles nor the MDOC Defendants provided a copy of this Step III denial, the Court cannot ascertain when this claim accrued. RN Laughhunn and Grievance Section Manager Russell have not met their burden of establishing that Nobles' claims against them are barred by the three-year statute of limitations.

### 6. HCUM Jill Britton

In a section of the amended complaint entitled, "Continued Denial of Medical Care / Newly Discovered Evidence", Nobles alleged that on December 11, 2019, HCUM Britton attended a "TelaMeds" [sic] meeting with Infectious Disease Specialist Dr. Craig L. Hutchinson, who believed that Nobles' tumors and enlarged testicles were caused by tuberculosis. Amend. Compl. at PageID.858-859. In his "Claims for Relief" at ¶ 62, Nobles stated:

> The failure of Defendant Jill Britton, MDOC/(LFR) Health Care Unit Manager, who did not petition Corizon to provide the Plaintiff with needed, necessary medical care, when she had specific knowledge that the Plaintiff was/is suffering and in pain from his enlarged testicles with tumors growing on and in them, delayed and denied the Plaintiff needed, necessary medical care, and

> constituted deliberate indifference to the Plaintiff's safety, and contributed to and proximately caused the above-described violation of Eighth Amendment rights.

Amend. Compl. at PageID.865 (emphasis omitted). Defendants do not address Nobles' claim against HCUM Britton, which allegedly arose from a meeting held on December 11, 2019. Nobles' claim against HCUM Britton falls within the three-year statute of limitations which expired on December 13, 2022. HCUM Britton has not met her burden of establishing that Nobles' claims against her are barred by the three-year statute of limitations.

### 7.     Retaliation claims against RN Kilmowicz and RN Willea

On November 8, 2017, Nobles had his enlarged testicle removed at Mercy Hospital and returned to the correctional facility later that day. *Id*. at PageID.856. Upon his return, Nobles wanted to tell Dr. Worel not to change or withhold medications prescribed to him by the outside doctor. *Id*. RN Kilmowicz told Nobles that the doctor was too busy and did not want to see him. *Id*. Nobles told RN Kilmowicz to tell Dr. Worel that he would file another grievance against Worel because "it was against the United States Supreme Court law to change another doctor's written prescription without consent." *Id*. An argument ensued, during which Dr. Worel asked RN Willea if Nobles had threatened him. According to Nobles, RN Willea shook her head signifying "no" and later signifying "yes". Dr. Worel called for officers, told them that Nobles threatened him, and told them to take Nobles to the hole. *Id*. at PageID.857. Based on these allegations, Nobles' retaliation claims against RN Kilmowicz and RN Willea accrued on November 8, 2017, and the statute of limitations expired on November 8, 2020. RN Kilmowicz and RN Willea have met their burden of establishing the affirmative defense that the Nobles' claims against them are time-barred.

### 8. Nobles' Arguments

The burden shifts to Nobles to demonstrate that an exception to the affirmative defense exists as to defendants RN Kilmowicz, Nursing Supervisor Catenholz, RN Lamb, RN Karnitz, and RN Willea. *See Campbell*, 238 F.3d at 775. Assuming that Grievance 1934 tolled Nobles' claims, the additional 131 days would not salvage his claims against these defendants. The statute of limitations for Nobles' most recent claims (the alleged retaliation on November 8, 2017) expired on November 8, 2020. Tolling the statute of limitations for 131 days would extend the statute on that claim to March 19, 2021, about nine months before Nobles filed the amended complaint.

With respect to the MDOC Defendants, Nobles contends that his claims are a "continuing wrong" which began in 2012. Nobles' Response (ECF No. 86, PageID.1177-1179. Pursuant to the "continuing violation doctrine," the statute of limitations does not begin to run so long as the wrong which forms the basis of a particular claim is ongoing. *See Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). A "continuing violation" exists where: (1) the defendant engages in continuing wrongful conduct; (2) injury to the plaintiff accrues continuously; and (3) had the defendant at any time ceased his wrongful conduct, further injury would have been avoided. *Id*. Courts recognize two categories of continuing violations: (1) "those alleging serial violations" and (2) "those identified with a longstanding and demonstrable policy of discrimination." *Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003) (citations omitted).

The continuing violation doctrine "rarely extends" to § 1983 cases. *Id*. at 267. When the doctrine has been extended to § 1983 actions, it applies only when the plaintiff's claim "is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Bruce v. Correctional Medical Services, Inc.*, 389 Fed. Appx. 462, 466 (6th Cir. 2010) (internal

quotation marks omitted). In making this determination, "[p]assive inaction does not support a continuing violation theory." *Id*.

Here, there is no basis to apply the continuing violation doctrine to Nobles' claims against the MDOC Defendants. Nobles' deliberate indifference claims against RN Kilmowicz, Nursing Supervisor Castenholz, RN Lamb, and RN Karnitz arose from discrete incidents which occurred at various times in 2013 and 2014. Nobles did not allege acts of deliberate indifference past those dates. Nobles' retaliation claims against RN Kilmowicz and RN Willea arose from a single incident which occurred on November 8, 2017. In short, there was no "continuing violation" involving defendants RN Kilmowicz, Nursing Supervisor Castenholz, RN Lamb, RN Karnitz, or RN Willea.

### IV.  Defendants Castenholz, Lamb, Laughhunn and Russell

Finally, the MDOC Defendants point out that Nobles has failed to state a claim against defendants Nursing Supervisor Castenholz, RN Lamb, RN Laughhunn or Grievance Manager Russell. Nobles alleged that these defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Specifically, Nobles alleged that defendants Castenholz, Lamb, Laughhunn and Russell denied a grievance at either Step I, Step II, or Step III.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, a prisoner plaintiff cannot maintain a § 1983 action against a prison employee who simply denies a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999) (a prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983); *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841

17

(6th Cir. 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"); *Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir.2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). For these reasons, Nobles' claims against defendants Castenholz, Lamb, Laughhunn and Russell should be dismissed for failure to state a claim.

V.      **Recommendation**

Accordingly, I respectfully recommend that the Corizon Defendants' Renewed Motion to Dismiss (ECF No. 70) be **GRANTED** and that defendants Quality Correctional Care, PA Daniel Spitters, Dr. Wilfredo Gamez, and Dr. Peter Sices be dismissed from this lawsuit.

I further recommend that the MDOC Defendants' Motion to Dismiss (ECF No. 82) be **GRANTED** as to defendants Sherri Castenholz, Mark Karnitz, Kathleen Kilmowicz, Patricia Lamb, Summer Laughhunn, Richard Russell, and Lisa Willea and that they be dismissed from this lawsuit.

I further recommend that the MDOC Defendants' Motion to Dismiss (ECF No. 82) be **DENIED** as to defendant Jill Britton.

I further recommend that this lawsuit proceed as to defendant Jill Britton and that the Court enter an amended case management order tailored to the issues remaining in this case.


Dated: January 24, 2023                 /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).