UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EURIL NOBLES,

        Plaintiff,

v.

QUALITY CORRECTIONAL CARE
OF MICHIGAN, *et al.*,

        Defendants.
_____/

Case No. 1:21-cv-199

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Euril Nobles ("Nobles"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). Two defendants remain in this action. Defendant Quality Correctional Care of Michigan a/k/a Corizon has filed a petition in Bankruptcy. This action is stayed as to Quality Correctional Care. *See* Order (ECF No. 118). The other defendant is MDOC Health Care Unit Manager ("HCUM" or "HUM") Jill Britton. Nobles' claim against defendant Britton involves an incident at the Earnest C. Brooks Correctional Facility (LRF) on December 11, 2019. This matter is now before the Court on defendant Britton's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 110).

    I.    **Nobles' allegations against HCUM Britton**

The Court previously summarized Nobles' claims as follows:

> In a section of the amended complaint entitled, "Continued Denial of Medical Care / Newly Discovered Evidence", Nobles alleged that on December 11, 2019, HCUM Britton attended a "TelaMeds" [sic] meeting with Infectious Disease

1

Specialist Dr. Craig L. Hutchinson, who believed that Nobles' tumors and enlarged testicles were caused by tuberculosis. Amend. Compl. at PageID.858-859. In his "Claims for Relief" at ¶ 62, Nobles stated:

> The failure of Defendant Jill Britton, MDOC/(LFR) Health Care Unit Manager, who did not petition Corizon to provide the Plaintiff with needed, necessary medical care, when she had specific knowledge that the Plaintiff was/is suffering and in pain from his enlarged testicles with tumors growing on and in them, delayed and denied the Plaintiff needed, necessary medical care, and constituted deliberate indifference to the Plaintiff's safety, and contributed to and proximately caused the above-described violation of Eighth Amendment rights.

Amend. Compl. at PageID.865 (emphasis omitted).

Report and Recommendation (ECF No. 109, 1373-1374).

## II. Legal standard

### A. Summary judgment

Defendant Britton has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

2

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III.    Discussion

Defendant HCUM Britton points out that Nobles did not properly exhaust any grievances against her through Step III before filing this action. In support of her motion, HCUM Britton submitted a copy of Nobles' MDOC Step III Grievance Report from January 1, 2015 through July 21, 2021 (ECF No. 111-3, PageID.1403-1407). The Report reflects that between the

4

incident date (December 11, 2019) and the filing of his amended complaint (December 13, 2021), Nobles filed two grievances through Step III while incarcerated at LRF. Neither of these grievances involved HCUM Britton or the December 11, 2019 incident.

In grievance LRF-20-08-900-28B ("900"), Nobles complained at Step I that a number of healthcare providers were deliberately indifferent to his medical needs by prescribing him the medication "Flomax". *See* Grievance 900 (ECF No. 111-3, PageID.1411-1467). Nobles listed the incident date as August 10, 2020, but later referred to the incident as lasting from "2007 to 8/10/20" and identified the individuals grieved as Dr. Gamez, P.A. Spitters, Dr. Worel, and Dr. Sices at LRF, as well as "John & Jane Doe Doctors" at four other MDOC correctional facilities (MRF, NRF, ARF, and IBC). *Id*. at PageID.1411. This grievance did not name HCUM Britton or involve the December 11, 2019 incident. Furthermore, the MDOC rejected this grievance as vague, stating "Grievance is vague as to what the main issue is or who you are grieving." *Id*. at PageID.1412. The rejection was upheld at Steps II and III. *Id*. at PageID.1408, 1410.

Next, in grievance LRF-20-04-360-02B ("360"), Nobles complained that on March 28, 2020, Food Service Supervisors Thompson and Shira inaccurately scored his 363 work evaluation. In plaintiff's words, the supervisors "retaliated against me, by preparing and filing a false 363 report against me, because of my previous grievances that I filed against MDOC/LRF staff"). Grievance 360 (ECF No. 111-3, PageID.1471). This grievance is not related to Nobles' claim against HCUM Britton.

Based on this record, Nobles did not properly exhaust a grievance to support his Eighth Amendment claim against defendant HCUM Britton. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

In his response, Nobles contends that he is excused from exhaustion because "HUM Britton, works for, Quality Correctional Care of Michigan, and/or the conduct of HUM Britton was at all times directly subsumed by Quality Correctional Care of Michigan" under a contract with the State of Michigan, and that the MDOC's grievance procedure does not apply to Quality Correctional Care.  Nobles' Response (ECF No. 115, PageID.1726). Nobles further states that

> MDOC – Defendant Britton, which is actually, Quality Correctional Care of Michigan – Defendant Britton, has failed to identify any provision within the applicable (2007) [sic] MDOC grievance policy, or any other authority, that can reasonably be interpreted as requiring prisoners to assert grievance [sic] against individuals neither employed by the MDOC nor otherwise subject to its authority or control.

*Id*. at PageID.1727.  Nobles is wrong. Defendant HUM Jill Britton has been an MDOC employee since 1996.[1]  Accordingly, defendants' motion for summary judgment should be granted.

### IV.  Recommendation

For these reasons, I respectfully recommend that defendant Jill Britton's motion for summary judgment summary judgment on the basis of exhaustion (ECF No. 110) be **GRANTED**.

Dated:  August 21, 2023              /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] Maygan Schaub, MDOC's Human Resources Officer at LRF stated in an affidavit: that she personally reviewed HUM Jill Britton's employment records; that she is familiar with the content of those records; and that "HUM Britton hired with the MDOC on August 11, 1996 and has been a state employee since her hire date."  Maygan Schaub Aff. (ECF No. 120-1, PageID.1811-1812).